In re SMITH.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

1. ATTORNEY AND CLIENT (§ 44*)—MISCONDUCT TOWARD CLIENT—MISAPPROPRIATION OF FUNDS.

An attorney who, after agreeing to accept as his fee 30 per cent. of the amount of the judgment secured and all costs, and, after collecting the judgment, tendered to his client, to be accepted in full satisfaction of all claims against the attorney an amount less than one-half of the original judgment, which amount he arrived at by considering all the interest as costs, although the clerk had refused to tax it as such and he had taken no steps to correct such ruling, and then figured the 30 per cent. on the total amount collected, including the amount deducted for himself, and also deducted the amount of certain disbursements, some of which had been taxed as costs and repaid, and thereafter testified to an interview with the client in which he stated that the latter agreed to pay him the interest, which interview the referee found never to have occurred, was guilty of professional misconduct.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

2. ATTORNEY AND CLIENT (§ 44*)—PROCEEDINGS AGAINST ATTORNEY—PUNISHMENT—SUSPENSION.

An attorney guilty of such misconduct will be suspended for two years and until the further order of the court, with leave to apply for reinstatement at the end of that time upon a showing that he has actually abstained from practice and otherwise properly conducted himself.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

Charges by the Association of the Bar of the City of New York against George V. Smith for professional misconduct as an attorney at law. Upon report of the official referee, respondent suspended from practice for two years and until further order of the court.

See, also, 155 App. Div. 945, 141 N. Y. Supp. 1146.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert W. Bernard, of New York City, for petitioner.
Edward J. Dryer, of New York City, for respondent.

INGRAHAM, P. J.　[1] On September 15, 1906, one Herman Schradin was killed as the result of an accident, and the respondent was consulted by his brother William Schradin in relation to a recovery of damages caused by the death of his brother. Thereupon a written retainer was executed by which the claimant agreed that:

"My said attorney shall keep, have and retain out of any money received by him in the prosecution of my claim 30 per cent. thereof as compensation for his services and in addition thereto all costs that may be legally taxed in any action brought by him in any court to enforce my said claim."

As a result of this retainer, the respondent commenced an action on behalf of his client against the New York Central & Hudson River Railroad Company, and after a trial the plaintiff in that action obtained a verdict for $3,500. On February 16, 1907, judgment was entered for the sum of $3,720.38, the costs and disbursements as taxed being $132.88, and interest on the verdict, being $87.50, was added to the verdict. When the respondent presented the bill of costs to the clerk, he sought to have this interest taxed as costs; but the clerk refused, and the costs were taxed at $132.88. The defendant appealed to this court, and the judgment was affirmed. The defendant then appealed to the Court of Appeals, and the judgment was again affirmed. The defendant then obtained a writ of error to the Supreme Court of the United States, where the judgment was again affirmed. On June 3, 1911, after the judgment had been affirmed by the Supreme Court of the United States, execution was issued against the New York Central & Hudson River Railroad Company for the sum of $5,028.71, and that amount was paid to the respondent on behalf of his client. Having received that sum, the respondent inclosed a check to his client for the sum of $1,727.65, with the statement that it was "in full for amount due estate out of $5,028.71 received by attorney." When the respondent refused to pay any additional amount, the client retained another attorney, and a proceeding was instituted in the Supreme Court against the respondent which resulted in an order directing the respondent to pay over to the client the additional sum of $1,254.88, and with that order he subsequently complied.

This proceeding was subsequently commenced charging the respondent with professional misconduct in refusing to pay this money to the client. The charges were referred to the official referee, who has reported the charges proved and that the respondent was guilty of professional misconduct. The report of the official referee contains a statement of the facts. Having seen the witnesses and heard their testimony, he has reported that, so far as there was a dispute between the attorney and his client, the client was to be believed. It is sufficient to say that the evidence satisfies us that the official referee was right, and we approve his report.

The amount which the respondent finally succeeded in collecting was made up of the verdict of $3,500, the costs of the respondent as taxed, with interest, $504, and the balance, $1,024.71, was interest on the original verdict down to the date of payment. In accounting to his client, the respondent retained all but $1,727.65, which sum he offered to pay his client, if his client would receive it as payment in full

of all money due the estate out of the sum of $5,028.71 recovered. He adopted a somewhat novel method of arriving at this amount. He took the total amount received, $5,028.71, and deducted the amount of the verdict, $3,500, and that left a balance of $1,528.71. This he called his costs, to which he claimed he was entitled under his retainer. The total amount that respondent was entitled to as the taxed costs was $504. Having thus deducted what he claimed was his "costs," from the amount that he received, he then had to determine upon what amount he should reckon the 30 per cent. Not content with having taken everything as costs except the verdict of $3,500, he deducted 30 per cent. from the total amount received, thus deducting 30 per cent. on the costs which were his, and on the interest which was not his. Thus, out of a verdict of $3,500 obtained by his client, out of which respondent was to receive 30 per cent. as compensation for his services in conducting the litigation, he offered to his client less than one-half, upon condition that his client would accept that sum in full. Then, quite characteristic of this whole transaction, the respondent made an additional claim for "cash advanced by me for certain expenses necessary to carry on suit" amounting to the sum of $263.95, and that amount he deducted from the balance of the verdict which he was willing to allow to his client. That amount he succeeded in getting the Special Term to allow him; but further investigation showed that, of this sum of $263.95, the sum of $113 had already been included in the costs and disbursements as taxed and which was paid by the New York Central & Hudson River Railroad Company to the respondent when the amount of the judgment was collected. The respondent still retains the sum of $113 which clearly belongs to his client.

To attempt to sustain this claim, the respondent has sworn to an interview with his client after the judgment was affirmed by the Court of Appeals, in which he told his client that the interest belonged to him as his costs, and that the client assented thereto. The client denies that any such conversation ever took place, and further testifies that the only conversation with reference to the interest took place after the affirmance by the Supreme Court of the United States when the client inquired about the interest. This conversation seems also to have been presented as a defense to the Special Term, when the claim was before the court. The Special Term evidently refused to believe the statement, and the official referee has taken the same position, and has reported that no such conversation ever took place. The respondent also claimed before the official referee, and still claims before this court, that he really believed that the interest on the verdict recovered was as matter of law part of the costs and that under his retainer the interest should be included in the term costs. But, although the clerk had refused to allow the interest to be taxed as costs, he made no attempt to review the action of the clerk. He makes the further claim here that, at the time he made this offer of payment, he knew the client was going to make objection to any settlement he might offer, and so he was justified in making his extreme claim, and that, as the claim to the accrued interest in this case involved such a serious question, he had a right to have the claim passed

on by the court. That comes with rather bad grace from an attorney who, when judgment was affirmed, sent to the client a part of the amount recovered, without any statement that there was any question as to the amount he was entitled to deduct therefrom, and attempted to exact from the client an agreement that the amount received was "in full for amount due estate" out of the amount received by the attorney, and thus preclude the client from bringing the question before the court.

It is quite clear that he had no such expectation. He sent the money to the client in the hope that he would accept the amount and waive any other claim, although he now admits that he considered it doubtful whether the client would assent to his claim that the sum of $1,-024.71 interest was included in costs to which the respondent was entitled under the retainer. But the claim that this respondent seriously believed that interest on a judgment after it had been entered, and which had been collected not as costs but as part of the judgment, could be included within the term costs is on its face absurd. That he endeavored to induce the clerk to tax the interest as costs shows that he then endeavored to get such a taxation as would be a basis for a claim that he was entitled to it. "Costs" are defined by the Code of Civil Procedure, and only such as are therein specified are entitled to be termed costs or included in a bill of costs. The interest on the verdict from the date of its rendition is included in the judgment, and is not collected as costs on any taxation or on any order of an appellate court affirming it. Certainly no man with the elementary education of a lawyer would believe for a moment that interest on a judgment when it is collected was anything but part of the original recovery or had any relation to costs or disbursements in an action. What this respondent really sought to do was to retain this interest under his retainer or alleged agreement with his client, and to support that claim he manufactured an interview with his client, which the client denies and the official referee expressly finds he never had.

We thus have it proved that the attorney, having undertaken the prosecution of an action for a specific fee, which was fixed in a written retainer, when he collected the judgment, retained a large portion of it to which he was not entitled, and sent the balance to his client under such circumstances that, if the client accepted the money, he would be estopped from afterwards questioning the amount the attorney retained; and, after that device failed, he manufactured an interview with his client which he failed to prove. That the official referee upon these facts should find the respondent guilty of professional misconduct as an attorney most certainly follows.

[2] The serious question presented is the extent of the discipline that should be inflicted. Contracts as to the attorneys' compensation between attorneys and clients are now made lawful by statute, and, although the courts have been seriously concerned with the abuses that constantly flow from allowing such contracts to be made, the conditions existing at the present time seem to make it necessary that such contracts should be made legal and enforced. It is the duty of the courts, however, to minimize as much as possible the dangers and

disadvantages resulting from the enforcement of such contracts, and to hold the attorney to the strictest good faith in his relations to his client based upon such contracts. Here the respondent undertook the prosecution of this case under a written retainer which was perfectly plain upon its face. The attorney and client at the beginning fixed the fee which the attorney was to receive, and any attempt by subterfuge or deceit to obtain a greater sum than that which the parties agreed should be fixed for the services to be rendered should be promptly and summarily dealt with by the courts.

It seems to me there has been a gross abuse by the attorney in his relations with his client, a gross attempt to impose upon his client, and both in the proceedings before the Supreme Court and in this proceeding an attempt to inject an agreement with his client which was never made. We cannot overlook such professional misconduct. But under all the circumstances, instead of imposing the extreme penalty of disbarment, we will suspend this respondent from practice for two years, and until the further order of the court, with leave to the respondent to apply for reinstatement at the expiration of such period upon showing that he has actually abstained from practice and has otherwise properly conducted himself. All concur.